OPINION OF THE COURT
Ralph Fabrizio, J.
In these cases, the court is presented with the question of whether to exercise its discretion and relieve an attorney from representing a client because of an acknowledged conflict arising out of the prior representation of a codefendant in the same matter. In one case, defendant Omarys Cristin is represented by retained counsel, Ronald Rubenstein, who had also been retained to represent codefendant Wanda Palmero on that same case, and did so for nearly 11 months. Ms. Palmero is now represented by counsel from the 18-B panel, Jeffrey Horn, assigned by the court after Mr. Rubenstein asked to be relieved in September 2010 because of the conflict. In the other case, defendant Kanton Callistro, who is indigent, was assigned a public *385 defender office, The Bronx Defenders, to represent him at the time of his arraignment on a felony complaint. That same office had already been assigned to represent a codefendant, who will hereinafter be called Jane Doe, when that defendant was arraigned before another judge earlier the same day on a separately-docketed-felony complaint. After Mr. Callistro and Ms. Doe were indicted and charged as accomplices to certain felony counts in the same indictment, The Bronx Defenders asked only to be relieved from representing Ms. Doe, who was then assigned counsel from the 18-B panel. Her case was dismissed in September 2010 before a different judge; the reason for that dismissal is unknown to this court. In both cases, after considering the records made and upon the review of applicable law, the court exercises its discretion and relieves counsel.
People v Palmero and People v Cristin
On October 21, 2009, defendants Palmero and Cristin were arrested for charges including criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]). According to the People, defendants were both present inside a house in Bronx County in which the police recovered more than 40,000 glassines of heroin, purportedly packaged and ready for sale. The police also recovered additional heroin and drug paraphernalia in various locations inside the house. The police allege that, when they entered the house, they found Ms. Palmero covered with white dust, which they believe to be powdered heroin. Ms. Cristin was found hiding in a different area of the house, on a different floor.
Both defendants retained Mr. Rubenstein to represent them, and both were indicted and charged as codefendants. Mr. Ruben-stein acknowledged from the outset that there was a conflict. Another judge made an inquiry early on in the case pursuant to People v Gomberg (38 NY2d 307 [1975]), and it is this court’s understanding that both defendants waived the conflict on the record in open court and indicated at that time that they each wanted Mr. Rubenstein to be their attorney. When defendants first appeared before this court on February 28, 2010, counsel was reminded of his ethical obligation to have both clients waive the conflict in writing, as required by rule 1.7 (b) (4) of the Rules of Professional Conduct (22 NYCRR 1200.0). During a subsequent court appearance, Mr. Rubenstein indicated he did obtain the required “informed consent, confirmed in writing” from each defendant.
*386 The case proceeded through motion practice and discovery. Counsel was actively engaged in plea discussions with the District Attorney’s Office for several months on behalf of both clients. The case was set down for hearing and trial on September 13, 2010. On that date, Mr. Rubenstein informed the court that he could no longer continue to represent both Ms. Palmero and Ms. Cristin, because at that point the conflict prevented him from giving each of his clients appropriate legal representation. He asked to be relieved from representation of Ms. Palmero, but stated his intention to remain as Ms. Cristin’s attorney. The court relieved Mr. Rubenstein from representing Ms. Palmero, and said that she would be given time to retain her own separate attorney. Mr. Rubenstein informed the court that Ms. Palmero was indigent, and requested court-assigned counsel for her.[1] The court directed that counsel from the 18-B panel be assigned to represent Ms. Palmero. Since it was an unusual situation, in this court’s experience, Mr. Rubenstein and the People were asked to provide the court with legal authority supporting Mr. Rubenstein’s application to be relieved of his representation of Ms. Palmero while continuing to represent Ms. Cristin.
On September 27, 2010, Mr. Horn appeared on behalf of Ms. Palmero. The People had not yet decided to take a position on the conflict issue and asked for an adjournment. Mr. Rubenstein said that he had decided to remain as Ms. Cristin’s counsel and that he intended to hire another attorney to cross-examine Ms. Palmero, should she testify at the trial, believing that measure would eliminate any conflict. Mr. Horn wanted to confer with his client about the issue. On October 22, 2010, the People indicated that they would not move to disqualify Mr. Ruben-stein. Mr. Horn, who had discussed the conflict with his client, expressed concern about “any potential cross-examination of my client by co-counsel, by Mr. Rubenstein, or . . . any member of his firm as well as the possibility that there could be that type of conflict even if it’s potentially in a summation or some other part of the trial.” Mr. Horn then made an oral application to sever Ms. Palmero’s trial from Ms. Cristin’s, saying that would “be appropriate to protect my client’s rights.” The People opposed the oral severance application. Mr. Rubenstein had *387 spoken with “independent counsel” and contended this individual could “cross-examine Ms. Palmero without consulting with me as to any information I have gained from my representation of Ms. Palmero, and that would ensure the integrity of the proceedings.”
The court referred all parties to rule 1.9 (a) of the Rules of Professional Conduct, which relates to an attorney’s representation of a client in a case in which a former client is also a party. The rule requires that unless the former client “gives informed consent, confirmed in writing,” to an attorney representing a codefendant in the same case, that attorney “shall not thereafter represent another person in the same or a substantially related matter.” (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.9 [a].) Mr. Horn stated that Ms. Palmero told him on several occasions that she would not consent to Mr. Ruben-stein’s representation of Ms. Cristin. Despite the ethical directive, Mr. Rubenstein would not withdraw from representing Ms. Cristin, and left it to the court to decide whether he should be relieved.

People v Callistro

On April 18, 2010, defendant Callistro was arraigned on a felony complaint charging him, inter alia, with violating Penal Law § 220.39 (1), criminal possession of a controlled substance in the third degree. The complaint alleged that Mr. Callistro and “an unapprehended individual” sold crack cocaine to an undercover police officer on April 17, 2007, at about 2:25 p.m., inside a building purportedly located at 2824 Morris Avenue. The defendant was arraigned in Part AR 3, which hears cases between 5:00 p.m. and 1:00 a.m., and is the “night arraignment” part in Bronx County. The judge presiding in that part assigned The Bronx Defenders to represent Mr. Callistro. Although Mr. Callistro is the only party named as a defendant in this felony complaint, the “back” of the file is stamped with the words “co-defendant,” a notation meant to alert the arraignment judge and the parties that there is a related docketed case.
During the arraignment, as part of the bail hearing, defense counsel stated in substance that if any “pre recorded buy money” was recovered from Mr. Callistro, it might be explained by the fact that he “went to an apartment at 2205 Morris Park Avenue where he had a friend Mr. White who he owed money to at the address,” and he received change from Mr. White prior to the arrest. There was an off-the-record bench conference, after *388 which the judge asked, “Do you recall the date that we put the co-defendant on? They were all adjourned to April 23rd in Part N.” Defense counsel stated, “I may have missed something. I don’t believe there is actually a co-defendant in this case.” The judge replied, “Let me be more specific. What we discussed at sidebar was this case is somehow linked to another case where drugs were being sold outside of an apartment which on the surface led the officers into that building to make an arrest inside of the apartment.” The case was adjourned until April 23, 2010 to join the related “co-defendant” case for grand jury action.
As it turns out, earlier that same day, before a different judge, three other defendants were arraigned on a separately-docketed felony complaint. One of these defendants is the individual named herein as Jane Doe, while another is Rufus White. They were charged, inter alia, with violating Penal Law § 220.16 (1), criminal possession of a controlled substance in the third degree. The complaint alleged that Ms. Doe, Mr. White and a third individual were present inside apartment 2E at 2707 Morris Avenue on April 17, 2010, and that police officers searched that apartment and found 41 bags of crack cocaine. Mr. White was arraigned on yet another separately-docketed felony complaint charging him with having possessed 27 additional bags of crack cocaine allegedly found in his waistband when he was inside that apartment. The judge assigned The Bronx Defenders to represent Ms. Doe; two different attorneys from the 18-B panel were assigned to represent the other codefendants. The attorney assigned by The Bronx Defenders to represent Ms. Doe is not the same attorney assigned to represent Mr. Callistro. This case was adjourned until April 23, 2010 for grand jury action. The cases against all four defendants named in the three separate dockets were presented to the same grand jury panel. On or about May 7, 2010, a true bill was voted naming Mr. Callistro, Ms. Doe, Mr. White and another codefendant as accomplices to the possession of the narcotics recovered inside apartment 2E at 2707 Morris Avenue. Defendant Callistro alone was charged in that indictment with a single count of criminal sale of a controlled substance in the third degree, presumably based on the charges in his stand-alone felony complaint. By doing so, the People essentially joined all defendants for prosecution in a single indictment.
Ms. Doe was arraigned on the indictment in Supreme Court, Part B, on May 18, 2010; Mr. Callistro was separately arraigned *389 on the same indictment on June 2, 2010. On June 25, 2010, a pretrial motion and a demand for discovery and bill of particulars were filed on behalf of Mr. Callistro, returnable on July 13, 2010. No motions were filed on Ms. Doe’s behalf. On July 13, 2010, the cases were called for the first time before this court. Mr. Callistro and his attorney from The Bronx Defenders appeared. Ms. Doe was not present; however, her attorney from The Bronx Defenders appeared. Both attorneys acknowledged that there was a conflict in The Bronx Defenders continuing to represent codefendants charged as accomplices in the same indictment. Ms. Doe’s attorney asked to be relieved immediately, and requested the court to assign counsel from the 18-B panel. Mr. Callistro’s attorney stated that “this is the first time this case has been on with any co-defendants. The last court date was the [Supreme Court arraignment date]. And when I received the indictment [it] was the first time I knew there were co-defendants.” Counsel indicated that an institutional conference had been held with a supervising attorney, and it was the supervising attorney’s “belief that I could remain on the case. Determination my office made. I am asking to stay on the case. We did file motions.”[2] Counsel stated that she had not spoken with Ms. Doe’s attorney at any time, and that a “wall” had been built because of the conflict to prevent sharing of any information about Ms. Doe or her case.
Even though Ms. Doe’s attorney asked to be relieved, that attorney still made arguments on Ms. Doe’s behalf, in the presence of Mr. Callistro and his attorney, stating that counsel had tried to reach Ms. Doe that day and had been unsuccessful, and citing to past records made in another court part about Ms. Doe’s medical issues. The court issued the bench warrant, relieved The Bronx Defenders from Ms. Doe’s case, and directed, as per the attorney’s request, that 18-B counsel be assigned whenever Ms. Doe next appeared. The court reminded the attorneys that they had to obtain written consent from both defendants if it was going to permit The Bronx Defenders to remain as assigned counsel for Mr. Callistro, and also for any legal authority supporting their request.
Ms. Doe was arrested within days on a new case; the arresting officer discovered the active warrant issued by the court. On July 23, 2010, Ms. Doe appeared in court before a different judge, and the warrant was vacated. Another attorney from The *390 Bronx Defenders appeared on her behalf. That judge set bail. On July 28, 2010, Ms. Doe appeared before this court. Yet another attorney from The Bronx Defenders appeared on the record on Ms. Doe’s behalf and began to argue for a change in the bail conditions. This court, recognizing that The Bronx Defenders had been relieved, cut off the colloquy and assigned an attorney from the 18-B panel present in the courtroom to act as Ms. Doe’s counsel. That attorney made his own bail application. He also made an application for Ms. Doe to be considered for a drug treatment program through “judicial diversion.” That application was referred to Bronx Treatment Court. During this time, codefendant Rufus White also applied for judicial diversion. On September 23, 2010, the judge in Bronx Treatment Court approved Mr. White’s application to enter drug treatment, and Mr. White pleaded guilty to criminal possession of a controlled substance in the third degree. On that day, the judge in that part dismissed the indictment against Ms. Doe. Meanwhile, on September 24, 2010, Mr. Callistro was arrested on a new case, charging him with resisting arrest and obstructing governmental administration. He was arraigned on the misdemeanor information on September 26, 2010. The arraignment judge assigned the Legal Aid Society to represent Mr. Callistro on this case.
On September 30, 2010, Mr. Callistro once again appeared before this court. Counsel stated that because Ms. Doe’s case had been dismissed, rule 1.9 of the Rules of Professional Conduct would apply, as Ms. Doe was a “former client.” Counsel read into the record only the part of this rule that states, “[a] lawyer ... in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse.” (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.9 [a].) Counsel acknowledged “that is a possibility in this case.” However, counsel argued, based on People v Wilkins (28 NY2d 53 [1971]), that “the presumption that there is a materially adverse interest here is rebutted by the fact that I work for an institutional defender.” Counsel stated that
“The Bronx Defenders, an institutional defender, much like The Legal Aid Society, which is the subject of the [Wilkins] case, is set up in such a way that I have never seen the file of [Ms. Doe] . . . Any conversations that [Ms. Doe’s counsel] had with her were confidential. A wall has been put up.”
*391 Counsel did not address the question posed by the court on the previous date about the need for a written waiver of the conflict from both clients, which is a requirement of rule 1.9.
The People agreed that “there is a potential conflict . . . If it went to trial, and [Ms. Doe] may take the stand, she could put herself in jeopardy of being rearrested under new information given,” and asked that The Bronx Defenders be relieved. Counsel asked that the Legal Aid Society be relieved from representing Mr. Callistro on the new misdemeanor case, and have the court assign The Bronx Defenders to represent defendant on this matter as well.[3] The court reserved decision on the applications.
Conclusions of Law
Both the Sixth Amendment to the United States Constitution and article I, § 6 of the New York Constitution guarantee that an accused in a criminal proceeding have the assistance of counsel. “[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him.” (United States v Gonzalez-Lopez, 548 US 140, 144 [2006], citing Wheat v United States, 486 US 153, 159 [1988].) “Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest.” (Wood v Georgia, 450 US 261, 271 [1981]; see also Cuyler v Sullivan, 446 US 335, 355 [1980, Marshall, J., concurring in part, dissenting in part], citing Holloway v Arkansas, 435 US 475, 483 n 5 [1978].) When a defendant has retained counsel of his or her own choosing, “judicial restriction[s] . . . upon the exercise of this fundamental right will be carefully scrutinized.” (People v Tineo, 64 NY2d 531, 536 [1985].) Earlier this year, in People v Carncross (14 NY3d 319, 323 [2010]), the Court held that “[i]n protecting a defendant’s Sixth Amendment rights, a trial court may on occasion properly disqualify the attorney of a defendant’s choosing due to that attorney’s conflicts, actual or potential, even in the face of defendant’s waiver of such conflicts.”
Following their arrest, Ms. Palmero and Ms. Cristin exercised their Sixth Amendment right to retain counsel of their choice, who was Mr. Rubenstein. And, the court permitted *392 such representation because these defendants each waived the conflict that existed, and affirmed that they wanted Mr. Ruben-stein to represent them. Mr. Rubenstein, in turn, satisfied his ethical obligation under rule 1.7 (b) of the Rules of Professional Conduct and obtained the requisite written informed consent from both clients. However, that waiver is no longer relevant in this case, because Mr. Rubenstein, for his own reasons, has concluded that the conflict now prevents him from fulfilling his ethical obligation to continue to zealously represent both defendants. Ms. Palmero will not waive the current conflict and agree to have Mr. Rubenstein continue to represent Ms. Cristin. Although Mr. Rubenstein asked to be relieved from representing Ms. Palmero, and did not dispute the court’s characterization of the conflict as one in which Ms. Cristin’s “interests are materially adverse to the interests of [his] former client” (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.9 [a]), Mr. Rubenstein nonetheless insists that he can and should be allowed to remain as Ms. Cristin’s lawyer. The court disagrees.
The starting off point in this analysis must focus on Ms. Cristin’s choice of Mr. Rubenstein to be her counsel. She retained Mr. Rubenstein, and he has been representing her for more than a year. Both she and Ms. Palmero chose to confide in Mr. Rubenstein, each with the expectation that he would remain as her attorney, despite the presence of any potential or actual conflicts. The presumption, therefore, is that Ms. Cristin be permitted to be represented by her counsel of choice, who is Mr. Rubenstein. (Wheat, 486 US at 160.) However, this presumption “may be overcome ‘by a showing of a serious potential for conflict.’ ” (United States ex rel. Stewart on Behalf of Tineo v Kelly, 870 F2d 854, 856 [2d Cir 1989], quoting Wheat, 486 US at 164.)
There is no “per se” rule recognizing that simultaneous retained representation of different defendants on the same case violates any of these defendants’ Sixth Amendment rights. (Wheat, 486 US at 160.) Nonetheless, “a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel.” {Id.) Here, Mr. Rubenstein’s request to be relieved of representing one client is nothing less than an acknowledgment that there is a real conflict, and it is a serious one. As far as Ms. Palmero is concerned, granting Mr. Rubenstein’s application to relieve him of his retained representation has answered the question of whether the conflict in this case requires that sepa *393 rate counsel be assigned for Ms. Palmero. Now the question is whether this conflict requires Ms. Cristin to retain new counsel.
Since a court always has the responsibility of “ensuring that [cases before it] are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them,” this responsibility should be weighed in determining an application to disqualify an attorney where a conflict exists. (Wheat, 486 US at 160.) There is a decided ethical problem in this case involving Mr. Rubenstein’s continuing representation of Ms. Cristin. It is, in fact, prohibited by the Rules of Professional Conduct because Ms. Palmero has not waived the current conflict. The per se violation of an ethical rule does not, in and of itself, trump the Sixth Amendment right to retain counsel of choice. (Cuyler, 446 US at 346 n 10 [discussing various conflicts and ABA standards].) It is, where relevant, something to consider in determining whether to relieve retained counsel, in a conflict of interest case involving representation of a current client, where the same attorney has represented another client on the same case. (Id.; Wheat, 486 US at 161.) In this case, if the court does not relieve Mr. Ruben-stein, he will violate “ethical standards of the profession” (Wheat, 486 US at 160), including, specifically, rule 1.9 (a) of the Rules of Professional Conduct. Such an ethical breach can, in and of itself, give rise to an appellate claim, should Mr. Ruben-stein be permitted to remain as Ms. Cristin’s counsel and she is convicted, that Ms. Cristin failed to receive effective assistance of counsel. (See Wheat, 486 US at 161; Carncross, 14 NY3d at 330.)
Mr. Rubenstein has acknowledged that, because of conversations he had with Ms. Palmero about this case when she was his client, he cannot cross-examine Ms. Palmero. Therefore, this is a situation in which “ ‘prejudice to defendant need not be precisely delineated but must be presumed.’ ” (Carncross, 14 NY3d at 328, quoting People v McDonald, 68 NY2d 1, 11 [1986].) He also acknowledges that even if the court would approve his suggestion that he let the “independent counsel” he has already spoken with assist him at the trial for the specific purpose of cross-examining Ms. Palmero, he could not speak with that attorney about any information he received from Ms. Palmero. It is understandable why Ms. Palmero is unwilling to waive the conflict, as this proposal demonstrates a complete “disloyalty” to his former client (People v McLaughlin, 174 Misc 2d 181, 182 [Sup Ct, NY County 1997]), in that Mr. Rubenstein believes *394 that it would be proper for another attorney, working with him in representing Ms. Cristin, to vigorously cross-examine Ms. Palmero. Should Ms. Palmero and/or Ms. Cristin be convicted, following a trial at which Mr. Rubenstein represented Ms. Cristin in this scenario, an untold number of meritorious appellate claims could be raised protesting this decision.
The severance proposed by Mr. Horn might be sufficient to protect Ms. Palmero’s rights; however, it would do nothing to ameliorate the root problem confronting Ms. Cristin. Even if a motion for a severance were granted, Mr. Rubenstein’s duty to his former client remains exactly the same as it was when he represented her in this action. Thus, he could never take any position adverse to her interests. Mr. Horn, as a counsel with no conflict, can freely pursue any plea discussions, or appropriate hearing or trial strategy, on Ms. Palmero’s behalf. Mr. Ruben-stein has to walk a very narrow line in this case, and basically cannot mention anything about Ms. Palmero that would be to her detriment, even if such argument would be to Ms. Cristin’s advantage. (See Holloway, 435 US at 489-490.) This, of course, would be to Ms. Cristin’s detriment. She presumably always understood this when she agreed to waive any potential conflict and agreed to have Mr. Rubenstein jointly represent her and Ms. Palmero. Whether there continues to be a knowing waiver of the new conflict is unknown. However, even if Ms. Cristin’s waiver is still valid, a court still has the right to disregard it where there is a real question about whether Mr. Rubenstein is able to afford her meaningful representation. (Wheat, 486 US at 160-161.) And Ms. Palmero’s prior waiver in this case is a nonstarter, as the circumstances surrounding her agreeing to the waiver have in fact changed, rendering the prior waiver meaningless. (See Carncross, 14 NY3d at 327-328.)
At bottom, allowing Mr. Rubenstein to represent Ms. Cristin, a client in “the same or a substantially related matter” without getting “informed consent, obtained in writing” from his prior client, Ms. Palmero, places him in ethical jeopardy. He has acknowledged that he is unable to directly fulfill his obligation to Ms. Cristin without violating his duty to Ms. Palmero, and has proposed that he can effectively represent this client by hiring independent counsel for some aspects of the case. Employing another attorney to aggressively cross-examine a former client in order to benefit a current client in the same case, if not violative of the letter of the ethics rule, more than violates its spirit. Independent counsel is what is needed in this case, but *395 for all aspects of the conflict-free representation to which Ms. Cristin is entitled. Given all the issues, and balancing Ms. Gris-tin’s right to a fair trial free of attorney conflicts against her right to be represented by counsel of choice, the court exercises its discretion and disqualifies Mr. Rubenstein from representing Ms. Cristin any further. She will be given ample opportunity to retain new counsel of her choice.
Mr. Callistro’s case is quite different in several respects. First of all, the law is very clear that “[t]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them.” (Gonzalez-Lopez, 548 US at 151; see Morris v Slappy, 461 US 1, 13-14 [1983]; Unites States v Parker, 469 F3d 57, 61 [2d Cir 2006].) A court should be cautious when considering whether to relieve assigned counsel who has developed a long-term relationship with a client. (Cf. People v Knowles, 88 NY2d 763, 766 [1996]; but see Morris v Slappy, 461 US at 13-14.) Nonetheless, where assigned counsel is involved, “courts are afforded considerable latitude in their decisions to replace appointed counsel, and may do so where a potential conflict of interest exists.” (United States v Parker, 469 F3d at 61 [Sotomayor, J.], citing United States ex rel. Stewart on Behalf of Tineo v Kelly, 870 F2d 854, 857 [1989].) As discussed, because the right to counsel itself does “include[ ] a right to conflict-free representation” (Armienti v United States, 234 F3d 820, 823 [2d Cir 2000]), a court should not assign counsel to represent an indigent defendant when the court is aware that counsel represents a codefendant or any other defendant in a factually related matter, or has represented or does represent a potential witness in the case, or where any other similar conflict exists. (See generally Cuyler, 446 US at 345-346.)
Here, had the arraignment judge been made aware of the conflict at the time Mr. Callistro was arraigned in criminal court, it is very clear that The Bronx Defenders would have never been assigned to represent him. At that time, the judge was only aware that there was a related case with other named “co-defendants,” but not that The Bronx Defenders had already been assigned by another judge to represent one of those codefendants. Indeed, it is a well-recognized practice in this county, and this city, for judges not to assign attorneys from the same public defender organization to represent codefendants on the same case, or to assign attorneys to represent an indigent defendant where the same 18-B attorney or the institutional defender organization which employs the attorney has been as *396 signed to represent a potential witness in the case.[4] Based on the colloquy at Mr. Callistro’s arraignment, it is clear that the attorneys knew there was a related case with related defendants who had already been themselves arraigned and their cases adjourned to have their case presented to a grand jury. It is also clear that neither the attorneys from the District Attorney’s Office nor The Bronx Defenders looked into whether there was a conflict based upon dual representation prior to the time Mr. Callistro’s case was presented to the same grand jury. Moreover, while The Bronx Defenders acknowledge the postindictment conflict, there has been no attempt to secure a written waiver of that conflict, to this court’s knowledge, by Mr. Callistro and Ms. Doe. To the extent that a Gomberg inquiry, which applies to conflicts involving retained counsel, is at all appropriate to undertake in a case involving assigned counsel (cf. People v Jordan, 83 NY2d 785, 786 [1994]), such inquiry was never attempted, nor requested, and at this point does not seem possible. Significantly, the attorneys never mentioned whether they had discussed their decision to ask to be relieved from representing one client, Ms. Doe, and be allowed to continue to represent Mr. Callistro with either one of these individuals, let alone that Ms. Doe or Mr. Callistro understood the ramifications of such a decision. Based on the record, it appears only that there was an institutional decision made, sometime prior to July 13, 2010, that Mr. Callistro alone would continue to be represented by The Bronx Defenders on this case. If there were a right to counsel of choice in this situation, the choice would be the client’s, not counsel’s. There is an appearance of impropriety when an assigned counsel with a conflict makes a choice about which client to continue to represent after the cases have been presented to a grand jury. In fact, it appears that, because of that institutional decision, motions and discovery demands were filed on behalf of one client, Mr. Callistro, but not the other, and that type of decision can result not only in the appearance that clients are treated differently, but it carries with it the potential *397 to prejudice the other client. The court is certain this was never the intent of the lawyers involved, as they also sought to protect Ms. Doe’s rights by requesting, on her behalf, even in her absence, that she would be assigned a new attorney who would presumably file motions as that attorney deemed fit.
The Bronx Defenders’ proposal that they will be able to afford Mr. Callistro conflict-free representation in this case because they have constructed a “wall” to prevent any dissemination of information about Ms. Doe is not only impractical, but has failed. The barrier discussed was breached on two occasions, when two different attorneys from The Bronx Defenders appeared on two different dates to represent Ms. Doe and make arguments on her behalf after she was rearrested and returned following the issuance of a “bench warrant.” If the wall were impenetrable, one would expect that all attorneys from The Bronx Defenders would have been on notice that they could not represent Ms. Doe in any other case, let alone the one in which their application to be relieved and have counsel assigned from the 18-B panel had already been granted. Therefore, the court cannot find that the “wall” referenced by counsel cured any conflict in this case. (See McLaughlin, 174 Misc 2d at 186-187.)
Even if there were a more secure barrier, the simple fact remains that a “wall” is completely impractical in this type of situation. The realities of indigent defendant representation practice by institutional defender organizations such as the Legal Aid Society and The Bronx Defenders in this county simply do not support a conclusion that a judge could rely on a “wall” to prevent gathering and sharing of information about the clients by more than one lawyer in these vital organizations. Given the large case loads, the need for attorneys from these organizations to be assigned to arraignment parts seven days and nights a week, and, of course, the times when these attorneys are appearing before only one judge at a hearing or a trial, different attorneys from the two Bronx County public defender organizations routinely stand up in court on calendar appearances for a client of the organization who they themselves have not been designated by the organization to represent. In this very case, at least three different attorneys from The Bronx Defenders appeared in court on Ms. Doe’s behalf in less than two weeks.
Put simply, while “the wall” concept is sometimes recognized as an option in cases where a firm has been retained by differ *398 ent clients who are parties in the same case, it is still incumbent upon the organization to demonstrate that there has been no sharing of information, and that the “wall” is adequate. (See Kassis v Teacher’s Ins. & Annuity Assn., 93 NY2d 611, 618-619 [1999].) Here, the record shows that, although there was an attempt to create a wall that would isolate Ms. Doe from the rest of The Bronx Defenders, that attempt did not succeed. Even if the proposed wall were fortified for the future, at the very least, “the appearance of impropriety” would always remain in this case. (Id. at 618; McLaughlin, 174 Misc 2d at 186-187; see also Solow v Grace & Co., 83 NY2d 303, 313-314 [1994].)
Counsel’s sole legal argument, relying on People v Wilkins (28 NY2d at 56), is unconvincing. In Wilkins, the Legal Aid Society had in the past represented a witness who testified at a criminal trial of a defendant who they now represented. The conflict was not discovered until another attorney from the Legal Aid Society was perfecting the appeal. After the conflict was discovered, the organization prudently withdrew from bringing the appeal and new counsel was assigned. (Id. at 55.) When the Court reviewed the claim that the defendant had been denied effective representation of counsel because of the “unknowing dual representation” during the trial (id.), it did so via an appeal from a writ of error coram nobis. Thus, the defendant was required to demonstrate the existence of actual prejudice. In that fact-specific case, the Court declined to find, as with a law firm, the rule that “knowledge of one [attorney] will be imputed by inference to all members of that law firm” would presumptively apply to a “large public-defense organization such as the Legal Aid Society” (id. at 56), and therefore did not find that the defendant had met his burden to demonstrate actual prejudice.
Here, in contrast, we have knowing dual representation. Wilkins cannot be read in a way that would relieve attorneys in public defender offices from the requirements of the Rules of Professional Conduct in cases where there is a knowing, contemporaneous conflict involving dual representation. It matters not whether knowledge will be presumed to be imputed within the confines of a public defender organization in a Monday-morning-quarterback analysis.[5] In this case, the conflict has been acknowledged, it is unwaived, and the court’s obliga *399 tion to assign an attorney who does not have a conflict to represent Mr. Callistro will not be satisfied by granting The Bronx Defenders’ application to remain as Mr. Callistro’s counsel on the indicted case.
Accordingly, considering all the information before the court, and in the exercise of its discretion, The Bronx Defenders’ applications to be allowed to continue to represent Mr. Callistro in the indicted matter, as well as to be assigned to represent him on his subsequent misdemeanor arrest, are denied. Instead, the court continues the assignment of the Legal Aid Society to represent Mr. Callistro on the misdemeanor case, docket No. 61123C-2010, and also assigns that organization to represent Mr. Callistro on the felony case, indictment No. 1696/2010. The Legal Aid Society does not appear to have been assigned to represent any of the defendants on the felony matter. Barring some unknown conflict involving some past representation, the court believes that this assignment will protect Mr. Callistro’s constitutional right to conflict-free representation on these cases, as well as allow him to continue being represented by an attorney he already knows and with whom he has begun to develop an attorney-client relationship.

. Ms. Palmero has been incarcerated on this case since its inception. Bail had been set at $200,000 by the arraignment judge. Ms. Cristin was released on a bail bond in that same amount posted on December 23, 2009, following an examination of surety.

. The motions have remained undecided pending the determination of counsel’s request to be permitted to remain on the case.

. Pursuant to local practice, if an indigent defendant who is assigned counsel is arrested again while a case is pending, the court will generally assign the same public defender organization or 18-B attorney assigned to the first case to represent the defendant on the new matter.

. Conflicts arise with increasing frequency, and judges and attorneys have to be vigilant in preventing the assignment of counsel who will have a conflict. For example, an alleged “buyer” in a drug sale case is usually charged with a misdemeanor, and is arraigned separately from the alleged seller, who is usually charged with a felony. The same public defender organization can never represent both of these individuals. In assault cases, including those involving domestic violence, individuals arrested frequently allege that they are also victims of a crime, and they are therefore both criminal defendants and complaining witnesses at the same time in the same incident, and the same attorney cannot represent both parties.

. In Wilkins, the Court supported its conclusion by referring to city-wide statistics relating to the number of attorneys then working for the Legal Aid Society (150), and the number of dispositions reached by those lawyers in *399 state and federal courts (more than 156,000 in the relevant year, 1969). To the extent that the Wilkins case might be relevant to a decision by a court to allow a large city-wide public defender organization with a knowing, unwaived conflict to continue representing a criminal defendant, the holding has not been applied to “a Criminal Defense Division office of a single county” (McLaughlin, 174 Misc 2d at 187), such as The Bronx Defenders.