[998 NYS2d 27]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAW-RENCE WATSON, Appellant.

First Department, December 2, 2014

APPEARANCES OF COUNSEL

*Office of the Appellate Defender*, New York City (*Richard M. Greenberg* of counsel), and *Olshan Frome Wolosky LLP*, New York City (*Renee M. Zaytsev* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Dana Poole* of counsel), for respondent.

### OPINION OF THE COURT

KAPNICK, J.

In 2010, defendant was convicted of two counts of criminal possession of a weapon in the second degree and one count of resisting arrest, and was sentenced to an aggregate term of 20 years to life. On appeal, he raises three issues: (1) whether the trial court violated defendant's right to counsel by disqualifying defense counsel; (2) whether the trial court violated defendant's rights under the Confrontation Clause by precluding defense

counsel from cross-examining a key witness regarding his past activities as a paid police informant; and (3) whether defendant's sentence is excessive.

Sixth Amendment Right to Counsel

At a pretrial calendar call on June 17, 2010, before the Honorable Richard D. Carruthers, attorney Robert Fisher of the New York County Defender Services (NYCDS), who had been representing defendant for eight months, alerted the court that he had learned from reviewing *Rosario* material turned over that day, that Toi Stephens,[1] who was arrested with defendant, and whom Fisher had been trying to locate, was represented by another attorney at NYCDS with respect to the same incident. Fisher took the position that this created a conflict, and although defendant expressed that he wanted to keep Fisher as his attorney, Fisher was not sure whether that would be appropriate. The court agreed that there seemed to be a conflict, and adjourned the case to the following Monday to resolve the matter.

On June 21, 2010, a discussion of the representation issue took place, the relevant portion of which is recounted below:

> "THE COURT: Good afternoon. This is on today with respect to the difficulty concerning representation at this point. Have you looked into the matter any further?
>
> "MR. FISHER: Yes, Judge. I was told by my supervisors that I couldn't examine the file that we have on Toy Stephens . . . I'm forbidden to send an investigator out to find Mr. Stephens. The investigator looked at the CJA sheet and saw the address on the CJA sheet on file by the court personnel which is different than the address that the prosecutor gave me when I searched for Mr. Stephens in May. At that point, I had to call off everything else per the instructions of my office. *They were, after they discussed it for a while, they thought Mr. Watson could probably waive just about anything he wants as a defendant and if he is willing to waive the conflict, they wouldn't have a problem. There seemed to be an interim step in there. I think for my own protection, he would have to waive any attempt to*

---

1. Stephens's first name also appears in the record as "Toy" and "Troy," and his last name also appears as "Stevens."

*call Toy Stevens as a witness*. If we did call Toy Stephens, there could be a problem because Mr. Stephens hasn't waived confidentiality of our representation with him and assigning a new lawyer, there may become issues with that. Everybody was cavalier about a mistrial at that stage and I'm sure the Court wouldn't find that acceptable. So I spoke to my client briefly inside . . . *I told him if I were going to continue to represent him, that he would have to waive even the attempt to call Toy Stephens as a witness because I don't want that to come up . . . either.* I didn't try hard enough to find Troy Stephens or I didn't question him hard enough; any issues with respect to Mr. Stephens. I would also indicate [the] People shouldn't be able to call Toy Stephens as a witness. It would seem inappropriate for them to call Toy Stephens now as a witness given the situation I'm placed in at this juncture. *Under those conditions, if Mr. Watson continues to wish to waive those conflicts, my office's position is that I can represent him.* That's the position of my authorities in my office.

"THE COURT: Mr. Watson, you have the right to be represented by an attorney who has strictly your interests are concerned [sic]. Your attorney is employed in the same office as counsel who represented Mr. Stephens. So that brings up a conflict of interest since his office has an interest in Mr. Stephens and you in your case. It conflicts. Is the representation [of] Mr. Stephens completed?

"MR. FISHER: Yes. Mr. Stephens pled shortly after his arraignment.

"THE COURT: Nonetheless, it puts the attorney and it puts you in a difficult position in the event that Mr. Stephens has relevant information about the case, it might serve to be favorable to you. *Your current attorney could not call that person to the witness stand ethically because his office already represents him. Could not technically cross- examine him.* Couldn't have access to the file to [sic] his own office that might reveal information about Mr. Stephens that would be helpful for cross-examination. Do you understand that?

"THE DEFENDANT: Yes. . . .

"[ASSISTANT DISTRICT ATTORNEY]: Your honor, if I may. It is the People's position that Mr. Fisher should be relieved from this case. Although the People have no intention right now of calling Toy Stephens on their direct case, if the defense is going to be that someone other than Mr. Watson had the gun, we would try to find him and put him on the stand. If it is Mr. Fisher's position he cannot cross-examine him.[2]

"THE COURT: I couldn't preclude the People from calling the person as a witness if the person has relevant information. I can't do that.

"MR. FISHER: *Well, Judge, then what position do you leave me in? If I can't cross examine the witness.*

"THE COURT: *That's the problem.*

"MR. FISHER: I understand. That's why I believe we are here today is because when we first learned of this, we had some initial reaction but my client indicated he wanted to waive the conflict. *The problem is, I think, the conflict on his part may be waivable but there is a bigger conflict, it will put me in a bad position if the prosecution calls Toy Stephens which they hadn't planned on.* They may decide and now I'm in a terrible position.

"THE COURT: *You have a very difficult ethical problem if you were to stay on the case and they call him.*

"THE DEFENDANT: I don't want to relieve Mr. Fisher because he's been my lawyer through the whole case and I feel that if I was to obtain another attorney, I want to go to trial, it pushes back time and I'm ready to proceed and get this matter over with as soon as possible.

"THE COURT: Believe me, I sympathize with that

---

**2.** Although the dissent asserts that the People asked that Mr. Fisher be relieved as counsel, I note that the People did not make a written motion to disqualify counsel, or otherwise initiate the disqualification; they merely stated that it was their position that Fisher should be relieved *if* he could not cross-examine Stephens.

but we want to get it done correctly. Trials can take turns that no one can anticipate and it might happen that Mr. Stephens will become a relevant witness, will be found, will be brought to court by the prosecution and then that would put you in a very difficult position. Certainly it would put your lawyer in a very difficult position and these are things that can happen. No one can predict with certitude that it will happen but it could happen. So the best thing to do as a matter of caution is to relieve Mr. Fisher and to appoint new counsel to represent you. . . .

"THE DEFENDANT: One more question.

"THE COURT: Sure.

"THE DEFENDANT: I'm not sure but [is it] up to my discretion if I really want to relieve Mr. Fisher?

"THE COURT: You see, we are in a difficult position now where I see him being placed in a position where he just would not be able to effectively represent you. I have, ultimately, the responsibility to see that trials are conducted fairly and without any impediments to either side.

"THE DEFENDANT: Even if I waive the conflict?

"THE COURT: Even then, when I see there is a real conflict that might not be able to be overcome, you see. I would like to keep Mr. Fisher on but at this point, I just don't see how I can do it. I sympathize with you being put in this position. There will be some delay. We will try to get an attorney who will represent you who will be able to take up the matter quickly." (Emphasis added.)

Following this ruling, the matter was adjourned until June 23, 2010, when a new attorney appeared for the defendant.[3]

Defendant now contends that the trial court deprived him of his constitutional right to counsel of his choosing by disqualifying Fisher. Defendant argues that the disqualification was erroneous because there was no conflict in the first place, and

---

**3.** Although defendant does not specifically argue that there was ineffective assistance of counsel on the part of the new attorney, defendant does make clear that he was unhappy with the new attorney and contends that he failed to meet or speak with him, discuss strategies or adequately prepare for trial.

even if there was, it was too remote to warrant disqualification and could have been cured by a knowing and intelligent waiver.[4]

As both the United States Supreme Court and the Court of Appeals have explained, the Sixth Amendment encompasses a right to select and be represented by one's preferred counsel. However, that right is not absolute (*see Wheat v United States*, 486 US 153, 159 [1988]; *People v Carncross*, 14 NY3d 319, 327 [2010]), and it must be balanced with the right to effective assistance of counsel (*Carncross*, 14 NY3d at 329). Thus, trial courts are given

> "substantial latitude in refusing waivers of conflicts of interests not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses" (*Wheat*, 486 US at 163).

In *Wheat* and its progeny, the issue before the Court was whether the trial court's decision to accept or deny a defendant's waiver of an actual or potential conflict of interest was proper in light of the competing concerns that the trial court is charged with balancing. Here, however, defendant not only challenges the trial court's refusal to accept his waiver of the potential conflict of interest, but also questions whether there was even a potential conflict of interest, in the first instance, where Fisher, who is a staff attorney at an institutional defense organization, never personally represented Stephens. It is crucial to recognize that here, unlike in other right to counsel cases, the proper initial inquiry is not whether defendant's waiver should have been accepted, but whether there was even a conflict or potential conflict of interest to waive in the first place. The court need only reach the issue of whether the waiver was properly accepted or denied after it has been established that there was a conflict or potential conflict of interest to waive.

---

4. The People do not squarely address the merits of this issue in their respondent's brief. Instead, they argue that the trial court's decision should be upheld because Fisher never objected to being relieved as counsel and so he acquiesced in the court's conclusion that replacing him with another attorney was required. The People also argue that defendant never indicated a clear willingness to waive his ability to call Stephens. To the extent the People suggest that analysis of the merits of the court's determination can be avoided based on hesitation expressed by defendant or counsel, they are incorrect.

I find that on this record,[5] no conflict or potential conflict of interest existed.

"A conflict of interest exists when an attorney's current representation is impaired by the loyalty he owes [to] a former client" (*People v McLaughlin*, 174 Misc 2d 181, 185 [Sup Ct, NY County 1997], citing *United States v Moscony*, 927 F2d 742, 749-750 [3d Cir 1991]). "An attorney's decision whether and how best to impeach the credibility of a witness to whom he . . . owe[s] a duty of loyalty necessarily place[s] the attorney in a very awkward position" (*Carncross*, 14 NY3d at 328 [internal quotation marks omitted, ellipsis and alterations in original]). In *People v Hall* (46 NY2d 873, 874-875 [1979], *cert denied* 444 US 848 [1979]), a potential conflict of interest existed where the defense attorney previously represented an important identification witness and was "intimately involved" with the witness's family and personal history and background. In *McLaughlin*, the People moved for disqualification of defense counsel and the trial court found that a conflict existed where the Legal Aid Society (LAS) represented the defendant and previously represented (although via different LAS attorneys) a primary witness against the defendant (174 Misc 2d at 183-186). The court reasoned that LAS could not continue its representation of the defendant, because the witness's testimony was crucial, the defense intended to raise the issue of the witness's guilt during the trial, and the witness was unwilling to waive any rights or privileges (*id.* at 182, 185-186). Importantly, however, in *McLaughlin*, there was evidence before the court that LAS had used or was using confidential information about its former client while interviewing prosecution witnesses and preparing for trial (*id.* at 183).

Here, there was no indication or allegation that Fisher ever used or was privy to any confidential information regarding Stephens.[6] It is undisputed that Fisher never personally represented Stephens and was not involved in the adjudication of his

---

5. We note that the record on this issue was underdeveloped in that there was no briefing or formal motion practice and little inquiry made by the trial court as to why Fisher or his supervisors thought he was not allowed to search for or cross-examine Stephens. Moreover, the trial court never probed the attorneys as to the status of the search for Stephens or whether the defense intended to pursue a theory that would necessitate Stephens's testimony.

6. The dissent states that this conclusion is based on hindsight; however, it is clear from the record that was before the trial court at the time of its decision that Fisher was not familiar with Stephens or his criminal case in any capacity.

case; nor was he even aware that another NYCDS attorney represented Stephens until he viewed pretrial disclosures made by the prosecution. Had Fisher continued his representation of the defendant, he would thus not have been placed in the "awkward position," discussed by the Court of Appeals in *Carncross* (14 NY3d at 328 [internal quotation marks omitted]), of having to balance a duty of confidentiality while conducting either a cross-examination or direct examination. There was no risk that Fisher could disclose Stephens's confidences since he did not have any knowledge of them, and, therefore, no potential conflict of interest could have arisen as a result of Fisher representing Watson. Accordingly, there was no conflict of interest or potential conflict of interest upon which to base Fisher's disqualification.[7]

As to whether the knowledge of NYCDS was imputed to Fisher, thereby creating a conflict of interest via the imputation rules, the Court of Appeals has distinguished between representation by the same lawyer and the same attorney of record:

> "The thrust of defendant's argument, as we view it, is not that there was dual representation of conflicting interests by the same lawyer, but that the mere dual representation by the same *attorney of record*, designated on behalf of the Legal Aid Society, raises a presumption of deprivation of effective representation of counsel.

> "While it is true that for the purpose of disqualification of counsel, knowledge of one member of a law firm will be imputed by inference to all members of that law firm, we do not believe the same rationale should apply to a large public-defense organization

---

7. While both the trial court and the dissent reason that the disqualification was warranted based on the conflict created by the "fact" that Fisher could not cross-examine or search for Stephens, this reasoning remains legally unsupported. The only basis in the record for this conclusion is that Fisher simply told the trial court that his supervisors told him that if he were to continue his representation of defendant, he would not be allowed to search for or cross-examine Stephens. I agree that *if* Fisher had a conflict that would have prevented him from conducting any cross-examination of a prosecution witness, then he would have to be relieved as counsel. The problem is that here Fisher and the trial court were mistaken in their belief that there was such a conflict. To the extent Fisher and his supervisors were correct that Fisher would not be allowed to see the office file on Stephens, this alone cannot create a conflict when no other attorney, such as his replacement counsel, would have access to these NYCDS files either.

such as the Legal Aid Society. The premise upon which disqualification of law partners is based is that there is within the law partnership a free flow of information, so that knowledge of one member of the firm is knowledge to all. . . .

"In view of the nature of the organization and the scope of its activities, we cannot presume that complete and full flow of 'client' information between staff attorneys exists, in order to impute knowledge to each staff attorney within the office" (*People v Wilkins*, 28 NY2d 53, 56 [1971] [citation omitted]).

Moreover, in *People v Hunter*, this Court declined to find a conflict of interest where a LAS attorney represented a defendant in his trial for criminal sale of a controlled substance, while another LAS attorney represented an individual who allegedly resembled the defendant and was arrested for selling marijuana in "close temporal and spatial proximity" to the defendant's alleged sale, and the defendant sought to attribute his alleged sale to the other LAS client (283 AD2d 248, 248 [1st Dept 2001], *lv denied* 96 NY2d 919 [2001]).

Here, defendant and Stephens were arrested in connection with the same incident, but Stephens's case was already concluded by the time of Fisher's disqualification and, again, there was no evidence or suggestion that information concerning Stephens was ever shared with Fisher. Indeed, Fisher acknowledged that he would be barred from viewing his office's file on Stephens or using the address on file to try to locate Stephens; similarly no other attorney would have had access to NYCDS's file either. Thus, in light of *Wilkins* and *Hunter*, it cannot be said that the prior representation of Stephens by the same public defense organization created a potential conflict of interest. Although this Court is aware that the trial court's "discretion is especially broad" when balancing the right to counsel of a criminal defendant's choosing and the right to effective assistance of counsel free of conflicts (*Carncross*, 14 NY3d at 330 [internal quotation marks omitted]), under the specific circumstances here, we find that the trial court abused its discretion in disqualifying defendant's counsel. Since we are vacating the judgment, this Court will not reach the remaining two issues raised by this appeal.

Accordingly, the judgment of the Supreme Court, New York County (Richard D. Carruthers, J., at substitution of counsel

ruling; Juan M. Merchan, J., at jury trial and sentencing), rendered October 29, 2010, convicting defendant of criminal possession of a weapon in the second degree (two counts) and resisting arrest, and sentencing him, as a persistent violent felony offender, to an aggregate term of 20 years to life, should be reversed, on the law, and the matter remanded for a new trial.

Tom, J.P. (dissenting). The Sixth Amendment affords a criminal defendant the right to representation by counsel; it does not guarantee the absolute right to representation by a particular attorney (*Wheat v United States*, 486 US 153, 159 [1988]). Where, as here, the chosen attorney is prohibited by a conflict of interest from conducting a thorough investigation, including interviewing a potential favorable witness, and would be prohibited from cross-examining that witness if called by the People, the attorney is unable to ensure that he will provide his client with an effective defense. Under these circumstances, even though the defendant expresses a willingness to waive any conflict, the exercise of the trial court's broad discretion to disqualify the attorney, to preserve the defendant's right to effective representation, will not be disturbed (*People v Carncross*, 14 NY3d 319, 329-330 [2010]).

Defendant was charged with two counts of criminal possession of a weapon in the second degree and one count of resisting arrest. The weapon possession counts alleged, respectively, that he possessed a loaded firearm outside of his home or business and that he possessed a loaded firearm with the intent to use it against another. Both defendant and one Toi Stephens ran away from the scene at the approach of police, and both were stopped and arrested. After defendant had been represented by attorney Robert Fisher of the New York County Defender Services (NYCDS) for eight months, counsel alerted the court that he had learned from reviewing *Rosario* material that his office had represented "the witness I had been looking for since May, Mr. Toi Stephens." The NYCDS had represented Stephens in connection with the same incident from which the charges against defendant arose, presenting counsel with a conflict of interest. The court adjourned the matter for a few days to allow Mr. Fisher an opportunity to resolve the matter.

On the return date, counsel advised the court that Stephens had entered a guilty plea "shortly after his arraignment," but had not waived confidentiality with respect to his representation by the NYCDS local defender. As a result, counsel had been

forbidden by his supervisor to examine the file on Stephens or even to send an investigator to locate him. To continue with his attorney's representation, defendant would have to waive any attempt by counsel to either locate Stephens or cross-examine him.

The People informed the court that they presently had no intention of calling Stephens on their case-in-chief; however, should it be claimed that someone other than defendant had possession of the gun, they would attempt to find Stephens and call him to testify. In view of defense counsel's inability to conduct any cross-examination of Stephens, the People asked that Mr. Fisher be relieved.

The court explained the conflict of interest resulting from the same office representing parties whose charges both arose out of the same incident. Though doubtful that he would be able to locate Stephens, defendant stated that he had been present when Stephens made a statement to police and that he "would want to have him called as a witness." Nevertheless, defendant expressed his desire to continue being represented by Mr. Fisher because obtaining another attorney would delay trial and defendant wanted to "get this matter over with as soon as possible."

The court explained that Stephens's testimony might be considered relevant and that the witness might be located and called to the stand by the People. In that event, Mr. Fisher would be placed "in a very difficult position" where he would not be able to provide effective representation. Counsel also reiterated that he would be placed in a "terrible position" if Stephens testified, because he would be unable to cross-examine him. At trial, the People had the open option of calling Stephens as a witness. Thus, despite defendant's professed willingness to waive counsel's potential conflict of interest, there might still exist "a real conflict that [the court] might not be able to . . . overcome." Noting its responsibility to assure a fair trial without any impediment to either party, the court directed a substitution of counsel (see Carncross, 14 NY3d at 328 ["the trial court had the independent obligation to ensure that defendant's right to effective representation was not impaired"]).

The majority proceeds from the advantage of hindsight to conclude that Mr. Fisher was never "privy to any confidential information regarding Stephens." The propriety of the court's ruling, however, must be examined in the context of the information available at the time it was made and the harm to be

avoided, not with the luxury of certainty after the fact. As the United States Supreme Court observed, a trial

> "court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly" (*Wheat*, 486 US at 162).

Since counsel could not examine the file that had been assembled by the local defender during its representation of Stephens, there was no information available to enable the court to assess whether Stephens might be able to offer any testimony favorable to defendant. The person with the most insight into what Stephens knew was defendant, who heard the statement Stephens made after his arrest, based upon which defendant indicated that he wanted Stephens called as a witness on his behalf. Given all the indications—that defendant regarded Stephens as a desirable witness and that the People would call him to testify should defendant suggest the gun was not his—it would have been improvident in the extreme to permit a conflicted attorney to proceed with his representation of defendant without any hope of being able to find out what Stephens knew or said so as to prepare an adequate defense, or without the ability to cross-examine him were he to be called by the People. Without the ability to ascertain possible exculpatory evidence within Stephens's knowledge or the ability to cross-examine Stephens if called and present incriminating evidence against defendant, due to the conflict of interest, counsel could not properly represent defendant. Yet, the majority, with the benefit of hindsight, remarkably finds no conflict of interest with counsel's representation of defendant. Substitute counsel faced no such limitations and was not ethically obliged to avoid locating and interviewing Stephens or to refrain from calling him to testify on defendant's behalf should his testimony prove beneficial. Thus, the trial court properly concluded that "had counsel not been disqualified under these circumstances, counsel's ability to objectively assess the best strategy for defendant to pursue may have been impaired" (*Carncross*, 14 NY3d at 328; *see Wheat*, 486 US at 163 [trial court must be afforded substantial latitude with respect to disqualification "where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses"]).

*People v Wilkins* (28 NY2d 53 [1971]), relied upon by the majority, stands only for the proposition that unknowing dual

representation of conflicting interests by the same attorney of record does not raise a presumption of ineffective assistance of counsel "without some showing of a conflict of interest or prejudice" (*id.* at 55). Prejudice results from factors that "deter[ ] . . . counsel from presenting an effective defense" (*id.* at 57), factors that are very much in evidence in the matter at bar. Here, the record indicates that "the particular staff attorney who defended the defendant knew of a potential conflict [of interest] and [would have been] inhibited or restrained thereby during trial" (*id.*). Clearly, *Wilkins* supports disqualification under the circumstances confronting the trial court in this matter.

Finally, it should be noted that the majority's disposition places trial judges in a position where any ruling made on disqualification of counsel is subject to reversal. Had defendant's attorney not been relieved by the court, defendant would be contending that counsel's inability to conduct a thorough investigation by locating and interviewing Stephens, who may be a favorable witness, deprived him of effective representation. It is not the function of appellate review to saddle the trial court with a Hobson's choice but rather to respect its broad discretion "when the defendant's actions with respect to counsel place the court in the dilemma of having to choose between undesirable alternatives, either one of which would theoretically provide the defendant with a basis for appellate review" (*People v Tineo*, 64 NY2d 531, 536 [1985]; *see also Wheat*, 486 US at 161-163).

Accordingly, the judgment should be affirmed.

MOSKOWITZ, DEGRASSE and RICHTER, JJ., concur with KAPNICK, J.; TOM, J.P., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered October 29, 2010, reversed, on the law, and the matter remanded for a new trial.