This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 19
The People &c.,
            Appellant,
        v.
Lawrence Watson,
            Respondent.

Dana Poole, for appellant.
Renee M. Zaytsev, for respondent.

STEIN, J.:

        Notwithstanding the general rule that, for the purposes of conflict of interest analysis, knowledge of a large public defense organization's current and former clients is typically not imputed to each attorney employed by the organization, conflicts may nevertheless arise in certain circumstances

- 1 -

involving multiple representations within such organizations.  In

this case, Supreme Court was placed in the difficult position of

having to either relieve defense counsel -- thereby depriving

defendant of the counsel of his choosing -- or permit counsel to

continue his representation despite a potential conflict of

interest, thereby impinging on defendant's right to the effective

assistance of counsel.  Under the circumstances presented here,

the court did not abuse its discretion by relieving defendant's

assigned counsel and appointing conflict-free counsel to

represent him.  Therefore, we reverse.

I.

Defendant showed a friend a gun in his waistband and

threatened to use it against another person.  He then went to a

park, where he was seen near Toi Stephens.  When police arrived,

defendant and Stephens fled separately.  Witnesses saw defendant

throw a gun during the chase, and a gun was subsequently found in

the identified location.  Cocaine and marihuana were also found

on the ground, and Stephens admitted that the drugs belonged to

him.  Defendant was charged with criminal possession of a weapon

in the second degree (two counts) and resisting arrest.  Stephens

was charged with drug possession.

Robert Fisher, an attorney employed by New York County

Defender Services (NYCDS), was assigned to represent defendant.

Eight months later, the People turned over Rosario material that

revealed that a different attorney from NYCDS had represented

Stephens on his criminal charge arising from the same incident. Fisher immediately brought this to the attention of Supreme Court. Fisher stated that he had been looking for Stephens as a possible witness for defendant before becoming aware of the potential conflict of interest. Even though defendant wanted Fisher to continue as his attorney, Fisher was not sure it would be appropriate to do so. The court granted an adjournment to determine whether the situation could be resolved.

At an appearance a few days later, Fisher advised the court that Stephens had entered a guilty plea shortly after his arraignment, and NYCDS no longer represented him. However, because Stephens had not waived confidentiality, Fisher's supervisors at NYCDS prohibited him from searching for Stephens, calling Stephens as a witness, or conducting any cross-examination if the People called him to testify. Fisher advised defendant that he could not continue to represent defendant unless defendant agreed to waive even the attempt to call Stephens as a witness. Fisher also asked the court to prohibit the People from calling Stephens, because his supervisors had determined that Fisher could represent defendant only under those conditions.

The court stated that it could not prevent the People from calling a relevant witness, and explained to defendant the potential conflict and the difficult position confronting Fisher. Defendant responded that he wanted to keep Fisher as his attorney

and waive the conflict, but also that he wanted Stephens to testify.  After hearing these statements that were incompatible with an unequivocal waiver, the court relieved Fisher of his assignment and assigned a new attorney, who represented defendant at trial.  The jury convicted defendant of all charges.

The Appellate Division, with one Justice dissenting, reversed the judgment on the ground that the trial court had abused its discretion in relieving Fisher (124 AD3d 95 [1st Dept 2014]).  The majority concluded that, because Fisher did not represent Stephens and was not privy to any of his confidential information, the relationship between NYCDS and Stephens did not constitute a conflict (see id. at 102-104).  The dissent would have held that, at the very least, a potential conflict existed, and the trial court properly acted within its discretion in disqualifying counsel (see id. at 107-108 [Tom, J.P., dissenting]).  The dissenting Justice granted the People leave to appeal to this Court.

II.

A determination to substitute or disqualify counsel falls within the trial court's discretion (see People v Carncross, 14 NY3d 319, 330 [2010]; People v Tineo, 64 NY2d 531, 536 [1985]).  "That discretion is especially broad when the defendant's actions with respect to counsel place the court in the dilemma of having to choose between undesirable alternatives, either one of which would theoretically provide the defendant

with a basis for appellate review" (Tineo, 64 NY2d at 536; see Carncross, 14 NY3d at 330; People v Robinson, 121 AD3d 1179, 1180 [3d Dept 2014]).  Criminal courts faced with counsel who allegedly suffer from a conflict of interest must balance two conflicting constitutional rights: the defendant's right to effective assistance of counsel; and the defendant's right to be represented by counsel of his or her own choosing (see US Const, 6th Amend; Carncross, 14 NY3d at 327; People v Gomberg, 38 NY2d 307, 312-313 [1975]).  Thus, a court confronted with an attorney or firm that represents or has represented multiple clients with potentially conflicting interests faces the prospect of having its decision challenged no matter how it rules -- if the court permits the attorney to continue and counsel's advocacy is impaired, the defendant may claim ineffective assistance due to counsel's conflict; whereas, if the court relieves counsel, the defendant may claim that he or she was deprived of counsel of his or her own choosing (see Wheat v United States, 486 US 153, 161 [1988]; Carncross, 14 NY3d at 330).

Courts "should not arbitrarily interfere with the attorney-client relationship," but must protect the defendant's right to effective assistance of counsel (Gomberg, 38 NY2d at 313; see Carncross, 14 NY3d at 327; see also Wheat, 486 US at 159-160).  Thus, the court must satisfy itself that the defendant has made an informed decision to continue with counsel despite the possible conflict, yet avoid pursuing its inquiry too far so

as not to intrude into confidential attorney-client communications or discussions of possible defenses (see Gomberg, 38 NY2d at 313; see also Holloway v Arkansas, 435 US 475, 487 [1978]).

Particularly relevant here, the presumption in favor of a client being represented by counsel of his or her choosing may be overcome by demonstration of an actual conflict or a serious potential for conflict (see Wheat, 486 US at 164).  The court may appropriately place great weight upon counsel's representations regarding the presence or absence of a conflict (see Gomberg, 38 NY2d at 314), because the attorney is generally in the best position to determine when a conflict of interest exists or is likely to develop during trial (see Holloway, 435 US at 485). Depending on when a potential conflict becomes evident, the court may not be aware of the details and ramifications of any conflict, or of the evidence, strategies or defenses that will emerge at trial (see People v Lloyd, 51 NY2d 107, 111 [1980]; Gomberg, 38 NY2d at 314; see also Wheat, 486 US at 162-163 [court must decide whether to allow waiver of conflict "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context" where conflicts are hard to predict]; Carncross, 14 NY3d at 328-329 [same]).  However, if the court waits until trial -- to ascertain what witnesses testify or what strategy or defenses are employed -- it runs a serious risk of a mistrial based on the conflict (see Carncross, 14 NY3d at

329-330).

Where there have been successive representations of individuals with different goals or strategies, a concern arises that counsel's loyalties may be divided because a lawyer has continuing professional obligations to former clients. Those obligations include a duty to maintain the former client's confidences and secrets (see Rules of Professional Conduct [22 NYCRR 1200.0] Rule 1.9), "'which may potentially create a conflict between the former client and present client'" (People v Prescott, 21 NY3d 925, 928 [2013], quoting People v Ortiz, 76 NY2d 652, 656 [1990]; see Rules of Professional Conduct [22 NYCRR 1200.0] Rule 1.7). Here, prior to defendant's trial, Fisher's NYCDS supervisors noted the institutional duty of loyalty to its former client, Stephens. Those supervisors -- who presumably were familiar with Stephens's file -- determined that there was a potential or actual conflict that prevented Fisher from investigating Stephens, attempting to locate him, calling him as a witness, or cross-examining him if he was called by the People. Under these circumstances, the trial court did not err in concluding that defendant's statements were insufficient to waive the conflict.

Our decision in People v Wilkins (28 NY2d 53 [1971]) does not compel a contrary result. In that case, this Court found that no conflict of interest existed merely because a defendant was represented by the Legal Aid Society and a

different staff attorney from that same organization had previously represented -- in an unrelated criminal proceeding -- the person who was now the complaining witness against Wilkins. There, the purported conflict was not discovered until after Wilkins's trial, and his counsel had no prior knowledge of the separate case involving charges against the complaining witness. Thus, the prior representation could not have affected the representation of Wilkins. We held that, unlike private law firms where knowledge of one member of the firm is imputed to all, large public defense organizations are not subject to such imputation, so there was no inferred or presumed conflict (see id. at 56; compare Rules of Professional Conduct [22 NYCRR 1200.0] Rule 1.10 [addressing imputation of conflict to firm]).

The current case is distinguishable from Wilkins, and we do not disturb the general rule against imputation of knowledge created there. In both cases, counsel worked for a large public defense organization and was initially unaware of another staff attorney's representation of a potential witness in the client's case, because there was apparently no free flow of information among staff attorneys. However, unlike counsel in Wilkins, defense counsel here became aware before defendant's trial of NYCDS's prior representation of Stephens, and the organization's representation of Stephens arose from the same incident that led to defendant's arrest. Additionally, Fisher's supervisors expressly prohibited him from attempting to locate

Stephens (apparently even by searching in publicly-available sources) or questioning him. This directly impinged on Fisher's representation of defendant. Not only did the supervisors instruct Fisher to refrain from investigating Stephens, they also directed that he could not cross-examine Stephens if he was called by the People. Therefore, even if the institutional representation of Stephens did not, in and of itself, present a conflict, such a conflict was created by the conditions imposed by Fisher's supervisors, which hampered his ability to zealously and single-mindedly represent defendant. Although the court could have inquired as to why NYCDS took the position of forbidding any investigation into or questioning of Stephens, the court was in a precarious situation because such an inquiry might have intruded into confidential attorney-client information. Thus, the court did not abuse its discretion by relieving counsel once those restrictions were announced.

Defendant's assertion that he was never given the opportunity to waive the conflict is unavailing. Although defendant indicated that he would be willing to waive the conflict, almost immediately thereafter he said that he wanted Stephens to be called as a witness at trial. These competing statements did not clearly demonstrate a knowing waiver, or that defendant would knowingly waive Fisher's conflict. Moreover, had he attempted to do so, it would have been within the court's authority to decline to accept such a waiver (see Carncross, 14

NY3d at 327-328).  A trial "court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses" (Wheat, 486 US at 163).

Further, while defendant might have agreed to allow counsel to refrain from calling Stephens, the People indicated the possibility that they would call him as a witness, depending on the defense that was raised -- including the potential assertion that someone other than defendant possessed and dropped the gun -- which would not be known until trial.  Although a waiver of the conflict by defendant would have permitted counsel to refrain from cross-examining Stephens if he was called, that would be a tactic based on loyalty to Stephens as a former NYCDS client, not a strategy employed in the best interest of defendant.  Additionally, if the court had waited until trial and the People had decided to call Stephens, a mistrial could have resulted (see Carncross, 14 NY3d at 329-330).  Thus, the court could properly decide that it would not accept a waiver in these circumstances, instead choosing to protect defendant's right to the effective assistance of counsel in order to ensure a fair trial (see Carncross, 14 NY3d at 327-328; see also Wheat, 486 US at 162-163).

In sum, the Appellate Division erred in holding that

the trial court abused its discretion.  Supreme Court appropriately balanced defendant's countervailing rights, based on the information it had at the time, and reasonably concluded that Fisher could not effectively represent defendant due to NYCDS's representation of Stephens and the duty of loyalty Fisher's supervisors were asserting toward that former client. Accordingly, the Appellate Division order should be reversed and the case remitted to that court for consideration of the facts and issues raised, but not determined, on the appeal to that court.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed and case remitted to the Appellate Division, First Department, for consideration of the facts and issues raised but not determined on the appeal to that court.  Opinion by Judge Stein.  Judges Pigott, Rivera, Abdus-Salaam and Fahey concur. Chief Judge DiFiore and Judge Garcia took no part.

Decided February 11, 2016