People v Gray (2023 NY Slip Op 51436(U))

[*1]

People v Gray

2023 NY Slip Op 51436(U)

Decided on December 29, 2023

Supreme Court, Kings County

Kitsis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 29, 2023
Supreme Court, Kings County

The People of the State of New York

against
Ciapha Gray, Defendant.

Ind. No. 00431-20 

For the defendant: John B. Stella (18b counsel)
For the People: Gianna Del Grippo and Meghan Vumback

Michael D. Kitsis, J.

Following a jury trial, the defendant was convicted of one count each of Assault in the First Degree (P.L. § 120.10(1)) and Criminal Possession of a Weapon in the Fourth Degree (P.L. § 265.01(2)). During the trial, an unanticipated conflict of interest arose involving defense counsel's successive representation of the defendant and a potential witness for the prosecution.
At trial, the People initially sought to call Mark Maldonado [FN1]
as a witness. They informed the jury during their opening statement on September 20, 2023, that Mr. Maldonado had been present for and had seen the underlying events, and that he would identify the defendant as the perpetrator. However, at that time the People apparently had lost contact with Mr. Maldonado, because days earlier bench warrants had been issued to bring him before the court after he had violated the terms of his release on his own pending cases.
On September 22, 2023, after the jury had already been sworn and had heard the testimony of several witnesses, the People located Mr. Maldonado. Prior to the start of court that day they requested to bring him before the court to vacate the bench warrants before calling him to testify that same day. Since Mr. Maldonado's warrants had been issued in the STEP part in Supreme Court, Kings County, this Court contacted the presiding Justice in the STEP part to determine when the defendant should be returned to deal with his own cases.[FN2]

In preparation, this Court sought to ascertain the identity of counsel on the open cases to [*2]inform them that Mr. Maldonado was being returned to court and his cases would be heard in Part 27. Court records showed that on September 20, 2020, three years earlier and during the height of the COVID pandemic, Mr. Maldonado had been arrested for Burglary in the Third Degree (P.L. §140.20) and other crimes. Mr. Maldonado was arraigned on those charged under Docket No. CR-018387-20KN, and John B. Stella, Esq., represented him at his arraignment.[FN3]
Due to the COVID protocols in effect in at the time, which sought to limit in-person interactions in the courthouse, arraignments were conducted virtually. As a result, Mr. Maldonado and Mr. Stella did not meet face-to-face during the arraignment. Also at that time, Mr. Maldonado had several other cases pending on which the Legal Aid Society represented him. By the time of Mr. Maldonado's next court appearance, on April 8, 2021, the Legal Aid Society had replaced Mr. Stella as counsel on Docket No. CR-018387-20KN as well. Coincidentally, and well after April, 2021, Mr. Stella was appointed as trial counsel for the defendant here, Ciapha Gray.[FN4]

It appears that Mr. Stella had little, if any, contact with Mr. Maldonado in the three years that elapsed after his virtual arraignment in September, 2020. Indeed, Mr. Stella initially had no recollection of his representation of Mr. Maldonado, and it took some time for him to locate his file or any other information about his representation of Mr. Maldonado. This is not surprising since it is likely that Mr. Stella's actual representation ended shortly after the arraignment and that he and Mr. Maldonado had no ongoing attorney-client relationship beyond the arraignment. Nevertheless, the court is cognizant that attorney-client relationships of even brief duration can result in a client sharing facts and personal thoughts and receiving advice of a most personal nature. This may be particularly so during a criminal court arraignment, when an attorney-client interview is likely to delve into many different aspects of the case and the defendant's circumstances.
The Court has an "independent obligation to ensure that defendant's right to effective representation [is] not impaired" by a conflict of interest. People v. Carncross, 14 NY3d 319, 328 (2010); see also People v. McDonald, 68 NY2d 1, 8 (1986). The Court's obligation arises in part out of the fact that the "[d]efendant, and indeed the public at large, are entitled to protection against the appearance of impropriety and the risk of prejudice attendant on abuse of confidence[.]" People v. Shinkle, 51 NY2d 417, 421 (1980). Thus, courts are required to conduct an inquiry to confirm that the defendant is aware of the risks of any potential conflict, and to obtain a knowing and intelligent waiver before proceeding.
Furthermore, to ensure effective, conflict-free representation, trial courts have "substantial latitude in refusing waivers of conflicts of interest . . . in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." People v. Addimando, 197 AD3d 106, 120 (2d Dept. 2021) (citations omitted).[FN5]
[*3]"Doubts as to the existence of a conflict of interest are resolved in favor of disqualification in order to avoid even the appearance of impropriety." Id.[FN6]

An important aspect of Mr. Stella's representation of Mr. Maldonado is that Mr. Stella owes Mr. Maldonado a duty of confidentiality in perpetuity with respect to communications between them. Mr. Stella simultaneously owes a duty to Mr. Gray, his client on trial, to cross examine Mr. Maldonado zealously, and to use those confidential communications to undermine Mr. Maldonado's credibility. Courts have recognized that "conflicts arise even in cases of successive representation because even though a representation has ended, a lawyer has continuing professional obligations to a former client, including the duty to maintain that client's confidences and secrets, which may potentially create a conflict between the former client and a present client." People v. Prescott, 21 NY3d 925, 928 (2013) (citations omitted); see also People v. Watson, 26 NY3d 620 (2016). Thus, a conflict arises when there "is a substantial risk that the lawyer's representation of the client would be materially and adversely affected . . . by the lawyer's duties to another current client [or] a former client[.]" People v. Addimando, 197 AD3d 106, 118-19 (2d Dept. 2021). This untenable situation raised an actual conflict for Mr. Stella between his responsibilities to his former client on the one hand and to his current client on the other, but only if Mr. Maldonado was actually called to testify at Mr. Gray's trial.
Here, had Mr. Maldonado testified, Mr. Stella's obligation to vigorously and zealously advocate for the defendant would have required him to impeach Mr. Maldonado about his observations, his ability to recall, and his truthfulness, "necessarily plac[ing] the attorney in a very awkward position, where prejudice to defendant need not be precisely delineated but must be presumed." Carncross, 14 NY3d at 328 (quoting People v. McDonald, 68 NY2d 1, 11 (1986)). See also People v. Terborg, 156 AD3d 1320 (4th Dept. 2017); People v. Robinson, 121 AD3d 1179 (3d Dept. 2014). If the People called Mr. Maldonado to the stand, "cross-examination of that witness may have been thwarted" by the fact of Mr. Stella's prior representation. People v. King, 248 AD2d 639, 640 (2d Dept. 1998).
In order to be certain that the defendant Ciapha Gray was fully aware of the issue and received independent legal advice regarding the conflict stemming from Mr. Stella's current representation of the defendant Ciapha Gray following his prior representation of Mr. Maldonado, the prosecution's apparent main witness, on September 22, 2023, the Court appointed another attorney from the 18-b panel, Marissa Benton, Esq., to counsel the defendant. [*4]Mr. Maldonado's counsel from his open STEP cases, The Legal Aid Society, also appeared.
After hearing arguments from the parties, the Court concluded that an actual conflict existed. See, e.g., People v. Hall, 46 NY2d 873 (1979); People v. Gordon, 272 AD2d 133 (1st Dept. 2000). The defendant, through Ms. Benton, made clear that he would not waive the conflict. The Legal Aid Society, represented by Julie Schaul, Esq., informed the Court that Mr. Maldonado was not was not in a condition to even determine if he would waive the conflict at that time. The People requested an adjournment to assess their options: whether to request a mistrial based on the conflict, or to move forward without Mr. Maldonado's testimony. The People made the request late in the afternoon on Friday; since the following Monday was a holiday, the Court adjourned to Tuesday for the People to either request a mistrial or proceed with the trial. The Court also vacated Mr. Maldonado's bench warrants and, at the request of the presiding judge from the STEP part, remanded Mr. Maldonado, scheduling him to appear in the STEP part the following Thursday, September 28.
On Monday afternoon, September 25, the People informed the Court and Mr. Stella that they intended to proceed with the trial. Thereafter, on Tuesday, the jury trial resumed, and additional witnesses testified. The jury trial was adjourned to Wednesday afternoon, so that the Court could handle calendar matters in the morning, and additional testimony was taken. On Thursday, during the lunch break, the People submitted an ex parte take out order, which the Court granted, permitting a detective investigator from the Kings County District Attorney's Office to take custody of Mr. Maldonado and transport him from 120 Schermerhorn Street, where the STEP part is located, to 320 Jay Street, where the trial was being held. Following the lunch break, the People spoke to Mr. Maldonado, and the trial was adjourned to the next morning. Thus, after conferring with Mr. Maldonado on September 22, the day they located him, the People had additional opportunities to meet with him on September 25, 26, 27, and 28. 
The People informed the court by email after 9:00 PM on Thursday, September 28 that Mr. Gray had engaged in unspecified conduct toward Mr. Maldonado, resulting in Mr. Maldonado refusing to testify out of fear of reprisal. The People moved for a Sirois hearing, claiming that the defendant's misconduct had now rendered Mr. Maldonado unavailable to them. See People v. Geraci, 85 NY2d 359 (1995). The sole witness the People intended to call at the requested Sirois hearing was a supervising Assistant District Attorney, who had interviewed Mr. Maldonado during the afternoon of September 28.
On Friday morning, the Court heard arguments from the parties regarding the People's application. Mr. Stella posited that any Sirois hearing risked raising the same conflict which would have prevented him from cross-examining Mr. Maldonado if he testified. The People argued that no conflict would arise, because Mr. Maldonado would not testify at the Sirois hearing, and only the credibility of the assistant district attorney who interviewed Mr. Maldonado would be relevant. The Court disagreed with the People's assessment; whether Mr. Maldonado was truthful in his representations to the People about purported threats made by the defendant was at the heart of the determination to be resolved by a Sirois hearing. If Mr. Maldonado had entirely fabricated the allegations of misconduct by the defendant, then there would be no basis to find that the defendant had somehow forfeited his right to confrontation. Therefore, even though Mr. Stella would not cross-examine Mr. Maldonado directly at the Sirois [*5]hearing, Mr. Maldonado's credibility would nevertheless be in issue.[FN7]

Mr. Stella also informed the Court that he had located his file related to his representation of Mr. Maldonado, and that he had taken notes during his interview of Mr. Maldonado. Mr. Stella argued that having to cross-examine an Assistant District Attorney about the Assistant's interview of Mr. Maldonado would place him in an untenable position of either revealing Mr. Maldonado's confidences to him or restricting his cross-examination to the detriment of his present client, the defendant. See People v. Robinson, 121 AD3d 1179 (3d Dept. 2014).
"The court may appropriately place great weight upon counsel's representations regarding the presence or absence of a conflict, because the attorney is generally in the best position to determine when a conflict of interest exists or is likely to develop during trial." People v. Watson, 26 NY3d 620, 625 (2016). The Court agreed with Mr. Stella that he could not zealously and single-mindedly represent the defendant while also adhering to his obligation to keep Mr. Maldonado's confidences. Mr. Stella would have the same conflict examining the Assistant District Attorney as he would examining the witness. His questioning of the prosecutor who had interviewed Mr. Maldonado would necessarily require him to probe areas of Mr. Maldonado's credibility and the A.D.A.'s reliance on it in determining whether any threats or intimidation of the witness had been made at all and, if so, whether the defendant could reliably be held responsible as their source. Therefore, the Court presented the People with the choice to either move forward without the Sirois hearing, or to have a mistrial declared, new counsel appointed for the defendant, and then hold a Sirois hearing prior to the commencement of a retrial. The People opted to rest their case, and the case was submitted to the jury for its consideration.
As noted above, the jury found the defendant guilty of two counts of the indictment.
The foregoing constitutes the Decision and Order of the Court, and it formalizes and provides additional authority to the oral ruling made during trial.
Dated: December 29, 2023
Brooklyn, NY
Hon. Michael D. Kitsis, A.J.S.C.

Footnotes

Footnote 1:Previously, the People had sought and obtained an Order of Protection for Mr. Maldonado and for a second prospective witness who was not called to testify at trial.

Footnote 2:The STEP part handles cases for defendants who are eligible to have their cases diverted through a drug treatment program.

Footnote 3:Mr. Stella's notice of appearance, dated in September, 2020, is part of the court file for Docket No. CR-018387-20KN.

Footnote 4:Ciapha Gray was initially represented by Brooklyn Defender Services and then by Christopher Hoyt, Esq., before this case was assigned to Mr. Stella.

Footnote 5:The trial court's discretion "is especially broad" when the potential conflict "place[s] the court in the dilemma of having to choose between undesirable alternatives, either one of which would theoretically provide the defendant with a basis for appellate review." People v. Tineo, 64 NY2d 531 (1985).

Footnote 6:The People argued that before the Court could find a conflict of interest, the defendant would have to establish that the potential conflict would actually prejudice him in some way, citing, inter alia, People v. Konstanides, 14 NY3d 1 (2009). The cases which require the defendant to "show that the conduct of his defense was in fact affected by the operation of the conflict of interest," Konstanides, 14 NY3d at 10 (quoting People v. Ortiz, 76 NY2d 652, 657 (1990)), address the standard which must be met before the defendant can prevail on appeal. Trial courts may commit any number of errors that will not afford a defendant relief on appeal (see, e.g., People v. Mattison, 67 NY2d 462. 469 (1986)); nonetheless, the fact that any particular error would not warrant reversal is not a reason for the trial court to commit that error intentionally.

Footnote 7:Notably, during the People's Molineux application prior to the commencement of trial, the People sought to introduce evidence that the defendant is a member of the Crips gang, and that the bar where the incident took place is a Crips-affiliated "hangout." However, in the People's affirmation in support of a Sirois hearing, the People claimed that Mr. Maldonado "stated that he knew the Defendant to belong to a gang and to have close associates that are South Latin King members, who have confronted Mr. Maldonado in the past." Del Grippo Aff. ¶ 13 (Sept. 28, 2023). The People further alleged that Mr. Maldonado had provided information that the defendant is "a gang member and affiliated with South Latin Kings." Del Grippo Mem. of Law p. 4 (Sept. 28, 2023). The Court is skeptical that these two affiliations can be harmonized.